IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Nina Y. Wang

Civil Action No. 22-cv-00566-NYW-KLM

NATHANAEL EUGENE OWENS,

    Plaintiff,

v.

MISTY ZADE, in her individual and official capacities,
MELISSA ROGERS, in her individual capacity,
BRIANNA GASSNER, in her individual capacity,
MIKE CORTESE, in his individual capacity, and
JOHN/JANE DOE, in their individual and official capacities,

    Defendants.

## ORDER ON MOTION TO DISMISS

Pending before the Court is the Motion to Dismiss Under Fed. R. Civ. P. 12(b)(6) ("Motion" or "Motion to Dismiss") [Doc. 37, filed September 13, 2022] filed by Defendants Misty Zade and Mike Cortese. Pro se Plaintiff Nathanael Eugene Owens ("Plaintiff") has responded to the Motion ("Response"), [Doc. 44, filed November 21, 2022], and the movants have submitted a Reply [Doc. 51, filed January 17, 2023].[1] The Court has reviewed the briefing on the Motion and the applicable law, and concludes that oral argument would not materially assist in the resolution of this matter. For the reasons discussed below, the Court **GRANTS IN PART** and **DENIES IN PART** the Motion.

---

[1] The Court notes that the Parties spell the names of several Defendants differently. Because all Defendants are or were affiliated with the Colorado Department of Corrections ("CDOC"), and considering Plaintiff's pro se status, the Court adopts the spelling used by Defendants. The Clerk of Court is **DIRECTED** to update the case caption to reflect the spelling used in this Order with respect to Defendants Melissa Rogers, Brianna Gassner, and Mike Cortese.

## BACKGROUND

The Court takes the following facts from the operative Prisoner Complaint ("Third Amended Complaint") [Doc. 12, filed May 20, 2022] as true for purposes of this Order.[2] Plaintiff is an inmate in the custody of the CDOC, incarcerated at Fremont Correctional Facility ("FCF") in Cañon City, Colorado. [*Id.* at 2].[3] In November 2020, shortly after contracting COVID-19, Plaintiff started experiencing chest pains, shortness of breath, fatigue, and brain fog in connection with exercise. [*Id.* at ¶¶ 2–3]. Plaintiff assumed the symptoms would subside, but when they worsened instead, he contacted FCF's medical staff on December 12, 2020. [*Id.* at ¶¶ 4–5]. Although FCF was familiar with Plaintiff's family history of congenital heart conditions on both sides of his family, it took at least three more contacts, and several weeks, until he was seen by staff members. [*Id.* at ¶¶ 1, 6].

On January 4, 2021, Plaintiff met with Defendant Nurse Practitioner Melissa Rogers ("Defendant Rogers" or "Ms. Rogers") at FCF's medical clinic. [*Id.* at ¶ 7]. Plaintiff and Ms. Rogers discussed Plaintiff's family history of heart disease and Plaintiff's heart murmur, which Ms. Rogers confirmed with a stethoscope. [*Id.*]. At the time, Plaintiff's symptoms included, but were not limited to, chest pain and shortness of breath. [*Id.*]. Ms. Rogers advised Plaintiff that his

---

[2] Plaintiff provides a far more detailed, and in some respects different, recitation of the relevant factual background in his Response to the Motion to Dismiss. *See generally* [Doc. 44]. However, the Court's analysis of the Motion is limited to the facts alleged in the Third Amended Complaint. *See Warad W., LLC v. Sorin CRM USA Inc.*, 119 F. Supp. 3d 1294, 1305 (D. Colo. 2015) ("[W]hen deciding a Rule 12(b)(6) motion, this Court may not consider new allegations contained in a plaintiff's response."). The Court therefore disregards the portions of the Response that purport to alter the facts in the Third Amended Complaint. The Court also disregards the arguments by the CDOC Defendants that treat the averments of the Response as the allegations at issue. *See, e.g.*, [Doc. 51 at 9].

[3] The Court uses the convention [Doc. __] to refer to the docket entry and page number assigned by the District's Electronic Case Filing ("ECF") system, unless otherwise indicated.

2

symptoms were due to heartburn or indigestion, and prescribed sucralfate. [*Id.* at ¶ 8]. In response, Plaintiff stressed his family's history of heart disease and noted that he had no prior stomach issues. [*Id.* at ¶ 9]. The medication was ultimately ineffective. [*Id.* at ¶ 10]. On February 2, 2021, Plaintiff had an electrocardiogram in the FCF clinic, which showed a slow heart rate and high blood pressure. [*Id.* at ¶ 12]. Ms. Rogers indicated that she ordered a special diet to control Plaintiff's high blood pressure, but a different nurse later stated that no such order was placed. [*Id.* at ¶¶ 11, 13].

On February 15, 2021, Plaintiff's mother, Sheryl Callies ("Ms. Callies"), contacted FCF about Plaintiff's treatment, seeking to obtain his medical records so she could get a second opinion. [*Id.* at ¶ 14]. Ms. Callies left a voicemail. [*Id.*]. On February 19, Ms. Callies reached Ms. Rogers, who informed Ms. Callies that she ordered a medical diet and an echocardiogram, with a potential cardiology visit to follow, if the echocardiogram showed a heart murmur. [*Id.* at ¶ 15]. Any echocardiogram or visit with a cardiologist would take place outside FCF and would therefore need to be approved by Defendant Misty Zade ("Defendant Zade" or "Ms. Zade"). [*Id.* at ¶ 16]. Ms. Zade learned about Plaintiff's condition when Ms. Rogers ordered the echocardiogram, but, according to the Third Amended Complaint, she "delayed or flat out denied the Plaintiff the medical test/care for 14 months." [*Id.* at ¶¶ 17–18].

On March 2, 2021, Ms. Rogers prescribed Plaintiff lisinopril for his high blood pressure. [*Id.* at ¶ 19]. While at the clinic, he again reported chest pain, but it was dismissed as muscle soreness by the staff. [*Id.*]. That night, Plaintiff "[b]lacked out" in FCF and was transported by ambulance to a hospital, where tests showed that he did not suffer a heart attack. [*Id.* at ¶¶ 20–21]. The hospital doctor instructed Plaintiff to take aspirin daily and see a cardiologist "as soon as possible." [*Id.* at ¶ 21]. At an appointment two days later, Ms. Rogers told Plaintiff that, rather

3

than a heart problem, he only had anxiety.  [*Id.* at ¶ 23].  However, she "only said this because Plaintiff asked to release Plaintiff's medical records to Plaintiff's family," and she simultaneously ordered an echocardiogram.  [*Id.*].  Despite numerous requests, Ms. Zade had not released the records to Plaintiff's family as of May 2022.  [*Id.* at ¶¶ 24–26].

On March 5, 2021, Ms. Zade and Ms. Rogers had Plaintiff's cell searched for drugs, had Plaintiff strip-searched, and had his urine tested, even though Plaintiff "has been free from drug addiction" since his arrest in February 2016.  [*Id.* at ¶ 27].  Defendants Zade and Rogers then refused to see Plaintiff for ten days, pending his urinalysis results.  [*Id.* at ¶ 28].  Defendants Zade and Rogers indicated that the testing was "random" and "done for security reasons," but Plaintiff was the only inmate subject to such treatment on March 5.  [*Id.* at ¶¶ 29–30].  Moreover, random urine testing is supposed to involve a computer-generated list of at least twenty inmates being taken to a secure location for testing, and FCF was on a lockdown protocol under which staff could only search a cell, conduct a strip search, or engage in urine testing if an inmate presented a security threat.  [*Id.* at ¶¶ 31–32].  However, according to his CDOC records, "Plaintiff is not, and has never been a security threat."  [*Id.* at ¶ 31].  Instead, Plaintiff alleges, Ms. Zade and Ms. Rogers "ordered the retaliation because Plaintiff accused the defendants of deliberate indifference towards the Plaintiff's serious medical needs in the grievances the Plaintiff filed begging for medical help." [*Id.* at ¶ 33].

Later that same day, Plaintiff visited the FCF clinic once again, complaining of "severe chest pains and trouble breathing."  [*Id.* at ¶ 34].  At the clinic, Defendant Sergeant Mike Cortese ("Defendant Cortese" or "Mr. Cortese") "act[ed] as a gatekeeper for security purposes only," patting down inmates and directing them to where they could receive care.  [*Id.* at 4].  Mr. Cortese "[was] not to interfere with medical services unless inmates [were] a security threat."  [*Id.*].

4

However, Mr. Cortese did not allow Plaintiff to meet with clinic staff. [*Id.* at ¶¶ 35–37]. Instead, he told Plaintiff where to get aspirin for the chest pain. [*Id.* at ¶ 38]. Plaintiff went to the medications window, staffed at the time by Defendant Nurse Brianna Gassner ("Defendant Gassner" or "Ms. Gassner"), and relayed his chest pains and difficulty breathing. [*Id.* at ¶¶ 39–40]. Ms. Gassner did not provide "any medical attention." [*Id.* at ¶ 41].

On April 7, 2021, Plaintiff received an echocardiogram that confirmed his heart murmur. [*Id.* at ¶ 42]. Plaintiff "was asked to wear a heart monitor" and did so throughout October 2021. [*Id.* at ¶ 43]. That month, a nonparty nurse prescribed nitroglycerin for Plaintiff's chest pain and put in a request for a visit with a cardiologist. [*Id.* at ¶¶ 44–45]. At Plaintiff's cardiology visit in January 2022, a stress test showed that Plaintiff's heart rate was sometimes too fast and sometimes too slow. [*Id.* at ¶¶ 46–48]. Treating the former could require a pacemaker, while treating the latter could lead to a heart attack. [*Id.* at ¶¶ 49–50]. The Third Amended Complaint does not indicate whether Plaintiff pursued either course of treatment. "After more than fifteen months of chest pain," Plaintiff alleges that he "just wants the medical care all human beings are entitled to, prisoner or not."[4] [*Id.* at ¶ 51].

On March 7, 2022, Plaintiff filed this action. *See* [Doc. 1]. The Third Amended Complaint appears to bring three claims related to deliberate indifference to serious medical needs in violation of the Eighth Amendment, via 42 U.S.C. § 1983, against Defendant Zade, in her individual and official capacities, and Defendants Gassner, Rogers, Cortese, and Doe (collectively, "Defendants"), in their individual capacities. *See* [Doc. 12 at 3–5]. The first claim arises out of Plaintiff's treatment by Ms. Zade and Ms. Rogers between November 2020 and the present, as

---

[4] It is unclear from the Third Amended Complaint, however, what specific medical care Plaintiff wants. *See generally* [Doc. 12].

5

well as their failure to release Plaintiff's medical records to his family ("Count I"). [*Id.* at ¶¶ 1–26]. The second claim is based on Ms. Zade and Ms. Rogers allegedly retaliating against Plaintiff for seeking medical treatment on March 5, 2021 ("Count II"). [*Id.* at ¶¶ 27–33]. Following the Parties' lead, the Court construes this as a First Amendment retaliation claim. The third claim, also based on the events of March 5, 2021, concerns Mr. Cortese and Ms. Gassner refusing to recognize that Plaintiff was experiencing a medical emergency when he visited the clinic ("Count III"). [*Id.* at ¶¶ 34–41]. The Third Amended Complaint names John Doe and Jane Doe as Defendants ("Doe Defendants"), although they are not referenced in any of the counts or allegations, "to cover anyone a formal investigation might uncover as participating in the violations of Plaintiff's rights." [*Id.* at 4]. Plaintiff alleges that he has exhausted his administrative remedies. [*Id.* at 9]. He seeks an injunction ordering medical care, as well as various damages. [*Id.* at 10].

Defendants Zade and Cortese ("CDOC Defendants") now move to dismiss the Third Amended Complaint under Federal Rule of Civil Procedure 12(b)(6). Defendants Rogers and Gassner have not been served as of this Order's entry. A Letter Motion submitted by Plaintiff concerning means of effectuating service was referred to and is pending before the Honorable Kristen L. Mix. *See* [Doc. 55; Doc. 56]. In addition, the Doe Defendants have not been named.

**LEGAL STANDARDS**

**I.   Rule 12(b)(6)**

Under Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In deciding a motion under Rule 12(b)(6), the Court must "accept as true all well-pleaded factual allegations . . . and view these allegations in the light most favorable to the plaintiff." *Casanova v. Ulibarri*, 595 F.3d 1120, 1124 (10th Cir.

6

2010) (quoting *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009)).  Nevertheless, a plaintiff may not rely on mere labels or conclusions, "and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Rather, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570); *see also Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (explaining that plausibility refers "to the scope of the allegations in a complaint," and that the allegations must be sufficient to nudge a plaintiff's claims "across the line from conceivable to plausible").  The ultimate duty of the Court is to "determine whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed."  *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007).

**II.  Pro Se Litigants**

Because Plaintiff proceeds pro se, the Court affords his filings a liberal construction.  *See Haines v. Kerner*, 404 U.S. 519, 520–21 (1972).  That said, it is not this Court's function "to assume the role of advocate for the pro se litigant."  *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005) (quoting *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991)).  Plaintiff's pro se status does not exempt him from complying with the procedural and substantive rules that govern all claims.  *See Murray v. City of Tahlequah*, 312 F.3d 1196, 1199 n.3 (10th Cir. 2002); *Dodson v. Bd. of Cnty. Comm'rs*, 878 F. Supp. 2d 1227, 1236 (D. Colo. 2012).

## ANALYSIS

The CDOC Defendants have moved to dismiss the Third Amended Complaint under Rule 12(b)(6), arguing (1) that Plaintiff fails to state a claim under the Eighth Amendment in Counts I

7

and III; (2) that Plaintiff fails to state a claim under the First Amendment in Count II; and (3) that the CDOC Defendants are entitled to qualified immunity. *See* [Doc. 37 at 2].[5]  Considering the way the allegations are organized in the Third Amended Complaint and discussed in the briefing on the Motion, and disregarding any unserved nonmovants at this time, the Court considers Counts I and II to be brought against Ms. Zade in her individual and official capacities, and Count III to be brought against Mr. Cortese in his individual capacity.

## I.   Ms. Zade and Eighth Amendment Deliberate Indifference (Count I)

An Eighth Amendment claim for deliberate indifference to serious medical needs has two elements: (1) an objective element, which asks "whether the harm suffered" by Plaintiff "was sufficiently serious"; and (2) a subjective element, which asks whether Ms. Zade "knew" that Plaintiff "faced a substantial risk of harm and disregarded that risk." *Est. of Jensen v. Clyde*, 989 F.3d 848, 859 (10th Cir. 2021) (quotation omitted).  In their Motion, the CDOC Defendants argue that neither element is satisfied here. *See* [Doc. 37 at 4–10].  They further assert that Ms. Zade is qualifiedly immune from Plaintiff's first Eighth Amendment claim, brought under 42 U.S.C. § 1983, because the Third Amended Complaint fails to allege a violation of clearly established law. *See* [*id.* at 12–13].[6]

---

[5] The CDOC Defendants also argue that Plaintiff cannot properly seek damages relief against an official-capacity defendant, or injunctive relief against an individual-capacity defendant. [Doc. 37 at 13–14].  In his Response, Plaintiff makes clear that he does not seek such relief. [Doc. 44 at 2]. Instead, with respect to the CDOC Defendants, he seeks damages from Ms. Zade in her individual capacity, injunctive relief from Ms. Zade in her official capacity, and damages from Mr. Cortese in his individual capacity. [*Id.*].  All theories of recovery are subject to the CDOC Defendants' substantive constitutional arguments; only the damages theories are further subject to the assertion of qualified immunity.

[6] Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  The invocation of qualified

The allegations against Ms. Zade with respect to Count I are as follows: (1) that Ms. Zade needed to approve any echocardiogram or cardiologist visit, as either would take place outside FCF; (2) that Ms. Zade learned of Plaintiff's "serious medical condition" when Ms. Rogers ordered an echocardiogram; and (3) that Ms. Zade "delayed or flat out denied the Plaintiff the medical test/care for 14 months after learning of Plaintiff's serious medical condition." [Doc. 12 at ¶¶ 16–18].[7] Later in the Third Amended Complaint, Plaintiff alleges that he received the echocardiogram on April 7, 2021, and visited the cardiologist on January 20, 2022. [*Id.* at ¶¶ 42, 46]. The Court thus agrees with the CDOC Defendants that, "[a]t best, [Plaintiff] alleges that further treatment was *delayed*" by Ms. Zade, rather than denied outright. [Doc. 37 at 7]. "[D]elay in medical care can only constitute an Eighth Amendment violation if there has been deliberate indifference which results in substantial harm." *Olson v. Stotts*, 9 F.3d 1475, 1477 (10th Cir. 1993) (alteration in original) (quotation omitted).

The Court finds that the barebones allegations against Ms. Zade cannot demonstrate the subjective component of deliberate indifference so as to defeat her assertion of qualified immunity. Plaintiff merely alleges that Ms. Zade did not approve his external care quickly enough, but does not sufficiently articulate allegations that allow a factfinder to conclude that Ms. Zade knew or should have known that such delay would cause a substantial risk of harm to Plaintiff and disregarded it nonetheless. *See Vasquez v. Davis*, 882 F.3d 1270, 1278 (10th Cir. 2018) ("Deliberate indifference . . . requires more than a showing of negligence . . . or even malpractice."). Indeed, as part of his Response, Plaintiff concedes that his physicians did not

---

immunity by Ms. Zade shifts the burden on the issue to Plaintiff. *See Lewis v. City of Edmond*, 48 F.4th 1193, 1197 (10th Cir. 2022).

[7] The Third Amended Complaint also alleges that Ms. Zade has refused to release Plaintiff's medical records to his family. [Doc. 12 at ¶ 26]. The Court need not consider this allegation because it does not involve a serious medical need.

9

believe his heart was causing the daily chest pain or shortness of breath.  [Doc. 44 at 15].  And, as the CDOC Defendants stress, the Complaint itself indicates that Ms. Zade and the FCF staff "have offered medication, diagnostic treatments, and visits to specialists."  [Doc. 37 at 10]; *see also* [Doc. 12 at ¶¶ 12, 19, 42–46].  On these limited facts, Ms. Zade did not have a "sufficiently culpable state of mind" to warrant a finding of subjective deliberate indifference just because she did not immediately approve the care Plaintiff preferred.  *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (quotation omitted); *see also Coppinger v. Townsend*, 398 F.2d 392, 394 (10th Cir. 1968) ("The prisoner's right is to medical care—not to the type or scope of medical care which he personally desires.").

Contrary cases help illustrate the Third Amended Complaint's shortcomings.  For example, in *Sealock v. Colorado*, the Tenth Circuit found the subjective element of deliberate indifference satisfied where a prison official knew an inmate might be having a heart attack, observed the inmate's symptoms in person, refused to drive the inmate to the hospital, and told the inmate "not to die on his shift."  *Sealock*, 218 F.3d 1205, 1210–11 (10th Cir. 2000).  Here, in contrast, the Third Amended Complaint does not indicate that Plaintiff and Ms. Zade had any direct interaction whatsoever, let alone an interaction in which Ms. Zade displayed subjective deliberate indifference to a serious risk to Plaintiff's health.  Plaintiff's allegation that Ms. Zade knew about his condition secondhand from Ms. Rogers is insufficient to satisfy the subjective component on its own.  *See Farmer*, 511 U.S. at 837 ("[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."); *see also Cary v. Hickenlooper*, 674 F. App'x 777, 780 (10th Cir. 2016) (affirming dismissal of inmate's deliberate indifference claim because the complaint "contain[ed] only

conclusory and generalized allegations concerning the defendants' knowledge of the alleged" harm).

Without the subjective element, there is no constitutional violation. Without a constitutional violation, Ms. Zade is entitled to qualified immunity. *See A.M. v. Holmes*, 830 F.3d 1123, 1134–35 (10th Cir. 2016) (explaining that "if the plaintiff fails to establish either prong of the two-pronged qualified-immunity standard, the defendant prevails on the defense"). Insofar as Claim I is brought against Defendant Zade in her official capacity, it is also untenable due to the lack of a cognizable constitutional violation. *See Crowson v. Wash. Cnty. Utah*, 983 F.3d 1166, 1186 (10th Cir. 2020). Count I is **DISMISSED without prejudice** against Ms. Zade.

## II. Ms. Zade and First Amendment Retaliation (Count II)

The Court construes Plaintiff's retaliation claim as being brought against Ms. Zade under the First Amendment and 42 U.S.C. § 1983. "It is well-settled that '[p]rison officials may not retaliate against or harass an inmate because of the inmate's exercise of his right of access to the courts.'" *Gee v. Pacheco*, 627 F.3d 1178, 1189 (10th Cir. 2010) (alteration in original) (quoting *Smith v. Maschner*, 899 F.2d 940, 947 (10th Cir. 1990)). The elements of a retaliation claim are "(1) that the plaintiff was engaged in constitutionally protected activity; (2) that the defendant's actions caused the plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) that the defendant's adverse action was substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct." *Shero v. City of Grove*, 510 F.3d 1196, 1203 (10th Cir. 2007). Here, the CDOC Defendants do not dispute the protected-activity or chilling-effect elements; rather they focus on the final, causal element. They argue that the Third Amended Complaint fails to state a claim because Plaintiff "does not allege specific facts that might allow the Court to conclude or infer that the adverse actions

complained of were undertaken in retaliation for his exercise of protected rights." [Doc. 37 at 11–12]. Because Plaintiff seeks both injunctive relief and damages from Ms. Zade, the Court must consider Plaintiff's ability to state a claim (for the injunctive relief portion) as well as his ability to overcome the assertion of qualified immunity (for the damages portion). The Court finds that the Third Amended Complaint meets both bars, so the retaliation claim may proceed against Ms. Zade.

      A.      **Constitutional Violation**

To state a claim for retaliation, Plaintiff must "'allege *specific facts*' showing that 'but for the retaliatory motive, the incidents to which he refers . . . would not have taken place.'" *Guy v. Lampert*, 748 F. App'x 178, 180 (10th Cir. 2018) (emphasis and omission in original) (quoting *Peterson v. Shanks*, 149 F.3d 1140, 1144 (10th Cir. 1998)). "To make a prisoner's claim of retaliation by a prison official plausible, it must be supported by (1) specific facts about the adverse action taken against the prisoner to make it plausible that the action was not motivated by legitimate grounds and (2) specific facts showing why the particular official would be motivated to improperly harm the prisoner." *Id.* at 181. Plaintiff cannot simply allege, without more, that he was retaliated against. *See Frazier v. Dubois*, 922 F.2d 560, 562 n.1 (10th Cir. 1990).

The CDOC Defendants argue that Plaintiff "does not allege specific facts that might allow the Court to conclude or infer that the adverse actions complained of were undertaken in retaliation for his exercise of protected rights." [Doc. 37 at 11–12]. As an example, they argue that Plaintiff "does not explain why he believes that the search of his cell and drug testing on March 5, 2021 was linked to his grievances about his medical care," and that he merely "concludes that it was [retaliation] without elaboration" or "factual detail." [*Id.* at 12]. But the CDOC Defendants understate the comprehensiveness of Plaintiff's allegations respecting his retaliation theory.

12

According to the Third Amended Complaint, Plaintiff (and no other inmate) was subject to a strip search, a cell search, and a urine test on March 5, 2021. [Doc. 12 at ¶¶ 27, 30]. At the time, FCF was allegedly on a COVID-19 lockdown, and the protocol in effect only permitted strip searches, cell searches, or urine testing if an inmate presented a "security threat." [*Id.* at ¶ 31]. But Plaintiff alleges that, per his CDOC records, he "is not, and has never been a security threat." [*Id.*]. Moreover, urine testing under FCF policy allegedly involved a computer-generated list of at least twenty inmates, and Plaintiff was the *only* inmate subject to urine testing on March 5, 2021. [*Id.* at ¶¶ 30, 32]. In opposing the Motion to Dismiss, Plaintiff argues that "the fact that he was singled out at a time when Defendants' actions violated policy is sufficient to show these actions were motivated by the Plaintiff's exercise of protected activity." [Doc. 44 at 9]. The Court agrees. If proven at trial, Plaintiff's allegations would comprise "specific facts" showing Ms. Zade's retaliatory motivation as well as the absence of any legitimate grounds for the invasive searching and testing of March 5, 2021. *See Guy*, 748 F. App'x at 181; *see also Gee*, 627 F.3d at 1189 (finding retaliatory motivation where prison officials "were aware of [inmate's] protected activity," which "complained of [their] actions," and the injury "was in close temporal proximity to the protected activity"). The Court concludes that Plaintiff states a claim for retaliation and will allow Count II to proceed against Ms. Zade, at least to the extent Plaintiff seeks injunctive relief.[8]

---

[8] In his Response, Plaintiff indicates that he "is unable to state which Defendant (s) [sic] ordered this retaliatory activity." [Doc. 44 at 9]. But the Third Amended Complaint clearly attributes the retaliation to Ms. Zade and Ms. Rogers. *See, e.g.*, [Doc. 12 at ¶¶ 27, 33]. This Court notes that without discovery, there is an asymmetry of information between the Parties. Drawing all reasonable inferences in favor of Plaintiff, this Court finds that the Third Amended Complaint provides sufficient notice to Ms. Zade of the First Amendment claim asserted against her and the factual allegations upon which the claim rests. *See Bark v. Chacon*, No. 10-cv-01570-WYD-MJW, 2011 WL 1884691, at *5 (D. Colo. May 18, 2011). In so concluding, I render no judgment as to whether Plaintiff will ultimately be able to marshal sufficient evidence to tie Ms. Zade to the alleged retaliatory activity. *See Bark v. Chacon*, No. 10-cv-01570-RBJ-MJW, 2012 WL 1080547, at *6 (D. Colo. Mar. 30, 2012) (granting defendants' motion for summary judgment and observing that at the motion to dismiss stage, "[i]t was unknown . . . whether plaintiff had or could develop

### B. Clearly Established Law

Although the Court finds that Plaintiff states a claim for violation of a constitutional right, the CDOC Defendants' assertion of qualified immunity means that Plaintiff may only recover damages from Ms. Zade in her individual capacity at trial if he can demonstrate that the right at issue is clearly established. *See* [Doc. 37 at 12–13 (invoking qualified immunity)]. The sole case Plaintiff cites in connection with his First Amendment theory is *Mackey v. Watson*, No. 17-cv-01341-CMA-STV, 2020 WL 4734339 (D. Colo. Aug. 14, 2020). In *Mackey*, an inmate recovered punitive damages where he argued that "confiscating his prescription eyeglasses and/or issuing a false incident report against him after he complained about [a] search of his cell" constituted unlawful retaliation. *Id.* at *1. Even if the jury verdict referenced in *Mackey*, a nonbinding case, could clearly establish any law, both the alleged protected activity and the manner of retaliation in that case are vastly different from what Plaintiff experienced here. *Mackey* is thus plainly insufficient to overcome qualified immunity on its own. However, Plaintiff also makes the argument that, for "obvious" constitutional violations, qualified immunity does not require a "prior factual[ly] similar case." [Doc. 44 at 4].

As the United States Court of Appeals for the Tenth Circuit has explained:

> Generally, a right is clear when it is apparent from controlling precedent or the clear weight of persuasive authorities from other circuits. . . . But even without precedential or persuasive authorities, a right can be clearly established when it is obvious. *See Taylor v. Riojas*, 141 S. Ct. 52, 53–54 (2020) (per curiam). "After all, some things are so obviously unlawful that they don't require detailed explanation and sometimes the most obviously unlawful things happen so rarely that a case on point is itself an unusual thing." *Browder v. City of Albuquerque*, 787 F.3d 1076, 1082 (10th Cir. 2015) (Gorsuch, J.).

---

evidence, through investigation or discovery, that might link specific wrongful acts to a particular individual. The issue before the Court now is whether plaintiff has come forward with facts that show that there is a genuine dispute of material fact regarding the allegedly wrongful actions of any of these officers.").

14

*O'Connell v. Tuggle*, 2021 WL 5973048, at *2 (10th Cir. Dec. 16, 2021). The *O'Connell* court held that a social worker who fabricated a confession in connection with a child abuse investigation committed an "obvious" constitutional violation. *Id.* at *4. The Court concludes that the allegations of retaliation by Plaintiff, if substantiated, would comparably reflect an obvious example of unconstitutional conduct. Rather than make a split-second decision under challenging circumstances, Ms. Zade allegedly responded to grievances submitted by the Plaintiff that called her judgment into question by ordering the Plaintiff's cell and body searched, and urine tested, for no legitimate reason *and* in violation of FCF's health and safety protocols during the COVID-19 pandemic. If true, that is obviously unconstitutional retaliation that no reasonable officer could view as lawful, so Plaintiff may attempt to recover damages from Ms. Zade in her individual capacity. *Cf. Taylor*, 141 S. Ct. at 53 (denying qualified immunity where "no reasonable correctional officer could have concluded" that the conduct at issue was "constitutionally permissible"). Of course, Plaintiff still needs to prove his allegations, and Ms. Zade may be able to raise qualified immunity again later in the proceedings after further factual development. *See supra*, note 8.

### III. Mr. Cortese and Eighth Amendment Deliberate Indifference (Count III)

The only allegations in the Third Amended Complaint that mention Mr. Cortese involve his actions on March 5, 2021, when he allegedly "refused to allow the Plaintiff to speak with the medical staff in the clinic" when Plaintiff again reported chest pains and difficulty breathing. [Doc. 12 at ¶ 35]. Instead, Mr. Cortese directed Plaintiff to the medications line, where he could obtain aspirin for the chest pain. [*Id.* at ¶ 38]. According to Plaintiff, these allegations state an Eighth Amendment claim for deliberate indifference that overcomes Mr. Cortese's assertion of qualified immunity in the Motion to Dismiss. *See* [Doc. 37 at 12–13]. The Court respectfully disagrees.

In trying to rebut qualified immunity, Plaintiff argues that Mr. Cortese "exceeded his discretion" by "mak[ing] a medical decision that the Plaintiff's chest pain and shortness of breath did not warrant medical attention." [Doc. 44 at 3]. Plaintiff invokes the cases "that state a security official cannot be a gatekeeper to medical staff," citing *Mata v. Saiz*, 427 F.3d 745 (10th Cir. 2005), and *Casey v. Lewis*, 834 F. Supp. 1477 (D. Ariz. 1993). [*Id.* at 3, 10–12]. He suggests that "[e]ven a lay person knows chest pain and shortness of breath to be a medical emergency requiring the patient receive immediate medical attention." [*Id.* at 10].

The Tenth Circuit explained in *Mata* that "deliberate indifference occurs when prison personnel deny or delay access to needed medical care, *i.e.*, when they fail to fulfill their gatekeeper role." 427 F.3d at 751 n.3; *see also Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976). In *Mata*, for example, a nurse "refused to perform her gatekeeping role in a potential cardiac emergency by not seeking a medical evaluation" for the plaintiff, who "was suffering from severe chest pains and required medical attention." *Id.* at 756. However, another nurse "fulfilled her gatekeeper duty by reporting [the plaintiff's] symptoms to a nurse practitioner," consistent with prison policy. *Id.* at 759. In *Casey*, the court likewise recognized that, "in some instances, security staff interfere with access to medical care" in a way that "can rise to deliberate indifference." 834 F. Supp. at 1545. But these holdings, and others like them, do not map onto Plaintiff's allegations here.

As the CDOC Defendants point out, the Third Amended Complaint's own allegations reveal that Mr. Cortese advised Plaintiff "to follow the treatment instructions he had received from an emergency room physician three days before." [Doc. 37 at 9]; *see also* [Doc. 12 at ¶ 21]. Specifically, Mr. Cortese sent Plaintiff to FCF's medications window, where he could obtain aspirin, as advised by a doctor that same week. Plaintiff does not allege that he had already taken aspirin at this point in the day, or that Mr. Cortese continued to refuse him access to medical care

16

once Plaintiff took an aspirin. Moreover, Plaintiff alleges elsewhere that Ms. Zade and Ms. Rogers "refused to see [him]" during the period in question because they were waiting for results of a urine test. [Doc. 12 at ¶ 28]. Mr. Cortese thus allegedly referred Plaintiff to the very place where he could obtain the treatment a doctor had just prescribed for the symptoms he was reporting. That is responsive, not indifferent. *Coppinger*, 398 F.2d at 394. Without any other allegations about Mr. Cortese's conduct, Plaintiff cannot show that his actions on the date in question constituted a violation of clearly established law under controlling case law. As discussed above, Plaintiff seeks only monetary damages from Mr. Cortese in his individual capacity. *See* [Doc. 44 at 2]. Count III is **DISMISSED without prejudice** against Mr. Cortese.

## IV.    Doe Defendants

"[P]ursuant to Fed. R. Civ. P. 10, a caption to a complaint must include the names of all parties." *Culp v. Williams*, No. 10-cv-00886-CMA-CBS, 2011 WL 1597686, at *3 (D. Colo. Apr. 27, 2011), *aff'd*, 456 F. App'x 718 (10th Cir. 2012). The "Federal Rules of Civil Procedure do not explicitly allow the naming of fictitious or anonymous parties in a lawsuit," and for this reason, "an action may be dismissed if the defendant is not sufficiently identified to permit service of process." *Id.* (quotation omitted). And a court "should only allow claims against parties whose names are unknown to proceed if the complaint makes allegations specific enough to permit the identity of the party to be ascertained after reasonable discovery." *Pearson v. Colo. Dep't of Transp.*, No. 18-cv-02538-KLM, 2019 WL 3550208, at *4 (D. Colo. Aug. 5, 2019) (quotation omitted).

In his Third Amended Complaint, "Plaintiff names John Doe and Jane Doe to cover anyone a formal investigation might uncover as participating in the violations of Plaintiff's rights mentioned in this complaint." [Doc. 12 at 4]. But the Third Amended Complaint identifies no

allegations specific to a John or Jane Doe. *See generally* [*id.*]. Thus, Plaintiff is **ORDERED** to **SHOW CAUSE** as to why his claims against the Doe Defendants should not be dismissed without prejudice. *See Culp*, 2011 WL 1597686, at *3 (dismissing Doe defendants where the allegations against those defendants were "vague and fail[ed] to meet the pleading standards under" *Twombly*); *Jensen v. Nucor Corp.*, No. 1:21-CV-00100-DAK-JCB, 2021 WL 4748453, at *2–3 (D. Utah Oct. 12, 2021) (dismissing Doe defendants where plaintiff "failed to provide any allegations relating to the Doe [d]efendants").

## CONCLUSION

Accordingly, **IT IS ORDERED** that:

(1)  The Motion to Dismiss [Doc. 37] is **GRANTED IN PART** and **DENIED IN PART**;

(2)  Count I is **DISMISSED without prejudice** against only Defendant Misty Zade;

(3)  Count III is **DISMISSED without prejudice** against only Defendant Mike Cortese;

(4)  Plaintiff is **ORDERED** to **SHOW CAUSE** no later than **July 21, 2023**, as to why his claims against the Doe Defendants should not be dismissed without prejudice; and

(5)  A copy of this Order shall be sent to:

> Nathanael Eugene Owens #176493
> Fremont Correctional Facility (FCF)
> P.O. Box 999
> Cañon City, CO 81215-0999

DATED:  June 20, 2023

BY THE COURT:

_____
Nina Y. Wang
United States District Judge